1  Kimberly M. Maynard *(pro hac vice pending)*
   FRANKFURT KURNIT KLEIN + SELZ PC
2  28 Liberty Street, 35th Floor
   New York, New York 10005
3  Telephone:  (212) 980-0120
   Facsimile:  (212) 593-9175
4  *kmaynard@fkks.com*

5
   Vishwanath Kootala Mohan (SBN 313759)
6  FRANKFURT KURNIT KLEIN + SELZ PC
   2029 Century Park East, Suite 2500N
7  Los Angeles, California 90067
   Telephone:   (310) 579-9600
8  Facsimile:   (310) 579-9650
   *vmohan@fkks.com*

9
   *Attorneys for Plaintiffs SUBMARINE*
10 *ENTERTAINMENT, LLC and SUBMARINE*
11 *VENTURES, LLC*

12              **UNITED STATES DISTRICT COURT**

13              **CENTRAL DISTRICT OF CALIFORNIA**

14                   **WESTERN DIVISION**

| | |
|---|---|
| 15  SUBMARINE ENTERTAINMENT, LLC AND SUBMARINE VENTURES, LLC, | Case No.: |
| 17 | **COMPLAINT FOR:** |
| 18              *Plaintiffs*, | 1. **TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)** |
| 19              v. | 2. **UNFAIR COMPETITION (15 U.S.C. § 1125(a))** |
| 20  SUBMARINE HAVEN B.V., | 3. **FALSE ADVERTISING (Cal. Bus. & Prof. Code § 17500 *et seq.*)** |
| 21 | 4. **UNFAIR COMPETITION (Cal. Bus. & Prof. Code § 17200 *et seq.*)** |
| 22              *Defendant*. | 5. **TRADEMARK INFRINGEMENT (Cal. Common Law)** |
| 23 | |
| 24 | **DEMAND FOR JURY TRIAL** |

25

26

27

28

─────────────────────────────
                    COMPLAINT

Plaintiffs Submarine Entertainment, LLC and Submarine Ventures, LLC (collectively, "Submarine") for its Complaint ("Complaint") against Defendant Submarine Haven B.V. ("Haven") allege as follows:

## NATURE OF THIS COMPLAINT

1.      For its Complaint, Submarine seeks an order enjoining Haven from using the trademarks SUBMARINE and SUBMARINE AMSTERDAM (collectively, the "Infringing SUBMARINE Marks") in connection with the production, distribution, and sales of films and other audiovisual works in the United States, as well as damages for the willful infringement of the rights and goodwill Submarine has built in its SUBMARINE® and SUBMARINE ENTERTAINMENT™ trademarks (the "SUBMARINE Marks") over the course of more than twenty years.

2.      Since 1998, Submarine Entertainment has produced, distributed, and sold some of the most critically acclaimed feature and documentary films and televisions series in the United States and has spotted, attracted, and signed first projects from such talents as Lena Dunham, The Duplass Brothers, Sean Baker, Ti West, and The Way Brothers, all under the SUBMARINE Marks.

3.      Submarine's films and series are known for their in-depth, emotional exploration of a wide range of topics, such as retrospectives on some of America's most important or intriguing entertainers, musicians, and political figures, from Joan Rivers to Joan Jett and from Albert Maysles to Iris Apthel; interviews with the last living members of Hitler's Third Reich; examinations of the dark side of social media; explorations of fringe cults, moon landings, and other significant, history-making events; plus unexpected subjects such as studies on the lives of Macedonian bee keepers and European truffle hunters.

4.      Submarine's works are routinely and consistently honored with the industry's most prestigious awards, including Academy Awards, Emmy Awards, Peabody Awards, NAACP Awards, International Documentary Association Awards, and more.

5.     Submarine has represented six of the last fourteen Academy Award winning documentaries: *American Factory*, *Citizenfour*, *20 Feet From Stardom*, *Man on Wire*, *The Cove* and *Searching for Sugar Man*, and has an additional 24 Academy Award nominations for its portfolio of films, as well as a string of nine of the Grand Jury Prize Winners at the Sundance Film Festival.

6.     In recognition of its unparalleled success, *Variety* has named Submarine as one of the top film representatives in the industry.  In fact, Submarine and its films regularly receive overwhelmingly positive reviews and recognition from industry press, including *Variety*, *The Hollywood Reporter ("THR")*, *Rolling Stone*, *The New Yorker*, *Deadline*, *Mashable, Guardian Reviewer*, and *The New York Times Critic*.

7.     Defendant Haven has actual knowledge of the tremendous and extremely valuable goodwill and reputation that Submarine has developed in its SUBMARINE Marks, as well as of Submarine's federally registered rights in its SUBMARINE® trademark and common law trademark rights in SUBMARINE ENTERTAINMENT™.

8.     Nonetheless, Defendant Haven has knowingly and willfully elected to offer feature, animated, and documentary films in the United States under the identical and nearly identical Infringing SUBMARINE Marks.

9.     Among other things, Defendant Haven has elected to use the exact same trademark SUBMARINE in the marketing and advertising for the March 2022 Netflix release of its film *Apollo 10½* and to use SUBMARINE AMSTERDAM in the credits for that same film.

10.     On Submarine's information and belief, Haven's use of SUBMARINE and SUBMARINE AMSTERDAM has caused, and will continue to cause consumers to be confused, mistaken, or deceived into believing that Haven and its film emanate from or are associated with Submarine.  This likelihood of confusion is compounded by the fact that the focus of Haven's *Apollo 10½* is the Apollo 11 moon-landing—the very same subject as Submarine's award-winning 2019 film, *Apollo 11*, as well as of Submarine's 2022 release, *Apollo 11: Quarantine*.

11.     Absent an injunction by this Court, Haven will continue its willful attempt to unfairly trade off of the reputation of and capitalize on the goodwill in Submarine and the SUBMARINE Marks, which Submarine has worked to build for more the two decades.

12.     This Complaint seeks an injunction to prevent continued irreparable injury to Submarine and the SUBMARINE Marks, as well as damages to compensate Submarine for lost sales and harm to its reputation and goodwill caused by Haven's bad acts.

## THE PARTIES

13.     Submarine Entertainment, LLC is a New York limited liability corporation with its principal place of business at 197 Grand Street 6W, New York, New York.

14.     Submarine Ventures, LLC is a New York limited liability corporation with its principal place of business at 197 Grand Street 6W, New York, New York.

15.     On Submarine's information and belief, Haven is a Netherlands private limited company with a business address of Arie Biemondstraat 111 (LAB111), 1054 PD Amsterdam, The Netherlands and with headquarters in Amsterdam, Los Angeles, and London.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. §§ 1331 and 1338(a) (federal question); and 28 U.S.C. § 1367 (supplemental jurisdiction).

17.     This Court has personal jurisdiction over Haven because, on Submarine's information and belief, (1) Haven maintains a headquarters and regularly conducts business in this jurisdiction and the State of California; (2) Haven's Founder and Co-CEO, Femke Wolting, is based in Los Angeles, California; (3) Haven produces films and other audiovisual productions bearing the Infringing SUBMARINE Marks in this jurisdiction and throughout the State of California; (4) Haven advertises, offers to sell, sells, offers to distribute, and distributes films and other audiovisual productions bearing the Infringing SUBMARINE Marks in this jurisdiction and throughout the State of

California; (5) Haven regularly transacts business within this jurisdiction and the State of California; and (6) Haven maintains agents and other contacts in this jurisdiction and the State of California. Accordingly, Haven has minimum contacts with the State of California such that subjecting Haven to the Court's jurisdiction would not offend traditional notions of fair play and substantial justice.

18.     Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because, on Submarine's information and belief, Haven transacts business within this district, and produces, distributes, and sells in this district products that infringe Submarine's SUBMARINE Marks.

## GENERAL ALLEGATIONS

### A.     Submarine and the SUBMARINE Marks

19.     Founded in 1998, Submarine produces, distributes, and sells feature and documentary films and television series around the world, including in U.S. interstate commerce.

20.     Submarine's works cover an array of subject matters, deeply diving into such wide-ranging topics as America's most important or intriguing entertainers, musicians, and political figures, interviews with the last remaining members of Hitler's Third Reich, the dark side of social media, America's amusement parks, moon landings and other history making events, Macedonian bee keepers, and European truffle hunters.

21.     During production and creative, Submarine and the films they represent use a variety of storytelling effects and techniques to create their works, including re-creations and animation.

22.     Regardless of the subject matter, Submarine and its works are renowned throughout the film industry for their consistently high quality.

23.     Submarine's films are routinely honored with the industry's most coveted accolades. For example, in 2020 and 2021 alone:

   a.     *Honeyland*, a film about a nomadic beekeeper in Macedonia, made
          history as the first film ever to be nominated for an Academy Award

in both the Best Documentary and International Feature Film categories.  The year prior, *Honeyland* won three different awards at the Sundance Film Festival.

b.   *American Factory*, Submarine's documentary on the globalization of industrial manufacturing, received numerous awards including an Academy Award for the Best Documentary feature.  It also received numerous awards in 2019, including a Director's Guild of America ("DGA") award for Outstanding Directorial Achievement in Documentary as well as the Critic's Choice Documentary award for Best Political Documentary.

c.   Submarine's documentary *Boys State*, a political coming-of-age story examining the health of American democracy, received the Primetime Emmy for Outstanding Documentary and the Sundance Grand Jury Prize, followed by the DGA award for Outstanding Directorial Achievement in Documentary in 2021.

d.   *Social Dilemma*, a documentary that delves into the ethics and mechanics of social media and contemporary technology, received two Primetime Emmy nominations for Outstanding Documentary and Outstanding Writing for a Nonfiction and a BAFTA nomination for the Best Documentary.

e.   Submarine's documentary, *Billie Eilish: The World's a Little Blurry*, was nominated for two Primetime Emmys for Outstanding Picture Editing for a Nonfiction and Outstanding Music Direction, as well as for the Critic's Choice Documentary Award for the Best Music Documentary.

24.   On the sales side, Submarine has been involved in the sale of six of the last fourteen Academy Award winning documentaries: *American Factory*, *Citizenfour*, *20 Feet From Stardom*, *Man on Wire*, *The Cove*, and *Searching for Sugar Man*.

25.     In 2019, Submarine sold the documentary *Apollo 11*, which was released worldwide, including in the United States, garnering more than $15.3 million in sales, and earning a spot on the short list for the Academy Award for Feature Documentary, as well as Emmy, Peabody, and Producer's Guild of America awards.  The SUBMARINE mark was included in the credits for the film.  Due in part to the favorable reception of *Apollo 11*, Submarine produced a short film, titled *Apollo 11: Quarantine*, which was released in Imax theaters nationwide beginning on January 29, 2022.

26.     In sum, films produced, distributed, and/or sold by Submarine have been nominated for a total of twenty-four Academy Awards, and earned a total of six Academy Awards, nine Grand Jury Sundance Awards, an almost uncountable number of Emmy Awards.

27.     Submarine also has produced and/or acted as executive producers on a number of television series, which include such titles as *The Devil Next Door*, *Evil Genius*, *The Keepers*, *Lenox Hill, Pick of the Litter*, as well as the winner of the 2018 Emmy for Best Documentary Series, *Wild Wild Country*.

28.     Needless to say, Submarine and its films have received overwhelmingly positive press coverage.  For example:

     a.     *The Social Dilemma "may be the most important documentary you see this year."*  LA Times (September 10, 2020).  Indeed, it received great reviews universally, including from *THR, IndieWire,* and *Variety*.

     b.     *Boys State* was touted as an *"an outstanding documentary"* by Film Week and included in multiple "Best Movies" list, including by *IndieWire* and *Rolling Stone.*

     c.     *Mashable* lauded the *Billie Eilish* documentary as "[o]ffer[ing] *a glimmer of hope in the alluring darkness of Eilish's musical universe - the hope that she, and those who come after her, will have the opportunity to share their gifts with the world without surrendering*

*their command of themselves.*"  *THR*, *Deadline* and others write similarly.

d.  *Guardian Reviewer* praised *Honeyland*, writing "*Honeyland really is a miraculous feat, shot over three years as if by invisible camera - not a single furtive glance is directed towards the film-makers.*" Similarly, *FilmWeek Reviewer* wrote:  "*This is one of the best movies of the year... Over and over again while I was watching it, I was asking myself 'How did they get that shot?'*"

29.   In addition to documentary films and television series, Submarine is also in conversations with various distribution, financing, and production partners who are interested in collaborating on the production of an animated series based on two comic book libraries, *Creepy* and *Eerie*, which are owned by Submarine's principals.

30.   Enjoyed by audiences of all ages, Submarine's films are regularly shown in theaters throughout the United States, while its films and television series are streamed on all of the major platforms, including Netflix, Apple TV, and Disney+.

31.   Since its first film in 1998, each of Submarine's works distributed in the United States have been branded with the SUBMARINE Marks, which are shown in the credits, as well as prominently displayed in Submarine's advertising and marketing materials and in the advertising and marketing materials for its films and series.

32.   As a result of its more than 20 years of continuous and substantially exclusive use of the SUBMARINE Marks in United States commerce, the SUBMARINE Marks have accrued tremendously valuable goodwill that belongs solely to Submarine. Consumers have come to understand that films and television series bearing the SUBMARINE Marks emanate from the same source—Submarine—and will be the same, consistent, and award-winning high-quality that has earned Submarine its unparalleled reputation in the film and television industries.

33.     As a result of the foregoing, Submarine owns common law rights in its SUBMARINE Marks for the production, distribution, and sale of films and television series.

34.     Submarine also owns the following incontestable federal trademark registrations for SUBMARINE (collectively, the "SUBMARINE Registrations"):

    a.     U.S. Registration No. 2,435,276 for the SUBMARINE trademark for "production of audio-visual programs concerts and television shows; production and creation of entertainment programming for dissemination via a global computer network" in International Class 41, which issued on March 13, 2001, and is based on use in interstate commerce at least as early as October 15, 1998; and

    b.     U.S. Registration No. 3,741,559 for "representation services in the nature of arranging and conducting sales for filmmakers and producers of films and scripts, advertising and marketing of films and scripts and consultation services related thereto" in International Class 35, which issued on January 26, 2010, and is based on use in interstate commerce at least as early as 2000.

**B.     Haven's Infringing Activity**

35.     Like Submarine, Haven produces and distributes feature-length films, including animated, scripted, and documentary films, but does so under the confusingly similar Infringing SUBMARINE Marks.

36.     Recently, Haven announced the March 2022 release in the United States of a film titled *Apollo 10½*, which is centered around the historic Apollo 11 moon-landing—the very same subject as Submarine's lauded *Apollo 11* and *Apollo 11: Quarantine* films—and which will be distributed by Netflix.

37.     On Submarine's information and belief, the credits for *Apollo 10½* will bear the trademark SUBMARINE AMSTERDAM, which differs from the SUBMARINE Marks only in the addition of the non-distinctive, geographic descriptor "Amsterdam."

38.     Haven is using and, on Submarine's information and belief, will continue to use the Infringing SUBMARINE Marks in the marketing and advertising for the *Apollo 10½* film.  For example, both the IMDb and Wikipedia pages for *Apollo 10½* list SUBMARINE as one of the production companies, while industry press organizations, such as *Variety*, *Deadline*, and *The Wrap* have reported that SUBMARINE is the producer of the film.  *See* **Exhibit A**.

39.     On Submarine's information and belief, as a result of Haven's use of the identical SUBMARINE trademark in its advertising and marketing campaigns, consumers have already been actually confused into believing that *Apollo 10½* is produced by Submarine.

**C.     Haven is Acting in Bad Faith and Counter to the Parties' Prior Dealings**

40.     Submarine first learned of Haven and its activities in the European Union in or around 2011, but did not learn that it was also using the Infringing SUBMARINE Marks and other marks containing the term SUBMARINE in the United States until approximately 2014, long after Submarine established rights in its SUBMARINE Marks.

41.     Since that time, Haven and Submarine have engaged in ongoing and elaborate settlement negotiations, in an effort to amicably resolve what Haven has acknowledged is a real likelihood that Haven's use of the Infringing SUBMARINE Marks in the United States will cause consumer confusion.

42.     During those discussions, Submarine has consistently objected to Haven's use of the trademarks SUBMARINE and SUBMARINE AMSTERDAM, maintaining that the mere addition of a descriptive geographic term would not be sufficient to avoid consumer confusion.

43.     Further, as a result of the parties' discussions, Haven agreed to and did use the mark SUB LA in connection with its activities in the United States.

44.     Also, during the course of the parties' settlement negotiations and in an effort to demonstrate its good faith, Submarine adopted a different trademark— SUBMARINE DELUXE—for works it distributes in Europe, despite that the parties have

not finalized their settlement agreement.  Haven expressly approved that trademark prior to its adoption by Submarine in Europe.

45.     On or around February 4, 2022, Submarine learned that, despite its objection to use of SUBMARINE AMSTERDAM and despite its own good faith modification of its trademark in Europe, Haven stopped using SUB LA and, instead, decided to use SUBMARINE and SUBMARINE AMSTERDAM for *Apollo 10½*.

46.     Submarine immediately notified Haven of its objection to use of the Infringing SUBMARINE Marks in the United States, but Haven has ignored Submarine's objection and refused to cease use of those marks in connection with the marketing, advertising, and distribution of *Apollo 10½* or other films in the United States.

47.     Worse yet, Submarine has since learned that Haven has been using SUBMARINE and SUBMARINE AMSTERDAM on credits in films distributed in the United States, in a deceitful and blatant violation of Submarine's rights.

48.     On Submarine's information and belief, Haven's films bearing the Infringing SUBMARINE Marks, including *Apollo 10½*, are or will be streamed on the same platforms as Submarine's works, including Netflix and, like Submarine's films, may be shown in theaters across the United States.

**D.     Haven's Acts Create a Likelihood of Confusion**

49.     Haven's Infringing SUBMARINE Marks are identical or highly similar to Submarine's SUBMARINE Marks and are used in connection with the same or highly related goods and services.

50.     On Submarine's information and belief, Haven's films bearing the Infringing SUBMARINE Marks are and will be marketed and advertised to the same consumers to whom Submarine's works offered under the SUBMARINE Marks are advertised and marketed.

51.     Haven's films bearing the Infringing SUBMARINE Marks are and will be distributed through the same channels of trade as Submarine's works bearing the SUBMARINE Marks.

52.     As a result of Haven's use of the Infringing SUBMARINE Marks in the United States, consumers are likely to mistakenly believe that Haven's films emanate from or are associated with Submarine or its SUBMARINE-branded films.

53.     Indeed, as a result of Haven's use of the identical or nearly identical Infringing SUBMARINE Marks on goods and services identical to those offered by Submarine under its SUBMARINE Marks, consumer confusion about the source of Haven's goods and services is not just likely, it is inevitable.

54.     On Submarine's information and belief, consumers encountering Haven's films bearing the Infringing SUBMARINE Marks have been actually confused into believing those films are produced, sold or distributed by, associated with, sponsored by, or emanate from Submarine, which they are not.

55.     Haven's use of the Infringing SUBMARINE Marks in the United States would mislead any reasonable consumer.

56.     On Submarine's information and belief, prior to distributing its films in the United States, Haven knew of Submarine's prior and superior rights in the SUBMARINE Marks and objection to use of the Infringing SUBMARINE Marks and, by adopting the Infringing SUBMARINE Marks in the United States, Haven intended to and did willfully trade on the goodwill associated with Submarine's SUBMARINE Marks.

57.     On Submarine's information and belief, Haven adopted the Infringing SUBMARINE Marks in the United States in bad faith and in a deliberate attempt to capitalize on the goodwill in and reputation of the SUBMARINE Marks.

58.     Haven's conduct is likely to cause confusion, mistake, or deception as to the origin, source, or sponsorship of its films bearing the Infringing SUBMARINE Marks.

59.     Haven's actions are likely to injure Submarine's business reputation.

60.     Haven's unauthorized use of the Infringing SUBMARINE Marks will result in lost sales opportunities for and incalculable harm to Submarine, due to the likelihood of confusion caused by Haven's acts.

61.     Haven's conduct is continuing and, unless enjoined by the Court, Submarine will suffer from irreparable injury and further harm, including by the creation of a likelihood of confusion among the consuming public and injury to Submarine's reputation and that of its SUBMARINE Marks.

## FIRST CAUSE OF ACTION

### Infringement of a Registered Trademark under the Lanham Act
### (15 U.S.C. § 1114)

62.     Submarine incorporates by reference the allegations in the preceding paragraphs of this Complaint.

63.     The acts of Haven described herein constitute infringement of the SUBMARINE Registrations, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

64.     Submarine owns the SUBMARINE Marks, as well as the incontestable SUBMARINE Registrations.

65.     The SUBMARINE Marks are conceptually strong, as the term "Submarine" is arbitrary as applied to Submarine's goods and services.

66.     The SUBMARINE Marks are commercially strong by virtue of Submarine's longstanding use and promotional efforts, widespread critical and commercial recognition, and unsolicited third party acclaim.

67.     Submarine's rights in and to the SUBMARINE Marks and SUBMARINE Registrations arose prior to Haven's use of the Infringing SUBMARINE Marks in the United States.  Submarine has priority in the SUBMARINE Marks.

68.     Haven's Infringing SUBMARINE Marks are identical or highly similar to Submarine's SUBMARINE Marks, are or will be used on the same or highly related products, and are or will be distributed to the same consumers through the same or overlapping channels of trade.

69.     Haven's use of the Infringing SUBMARINE Marks are likely to cause consumers to be confused, mistaken, or deceived as to the source, affiliation, connection,

or association of Haven or its films and to believe that Haven or its films are made or sponsored by, or otherwise associated with Submarine or its films and television series offered under the SUBMARINE Marks.

70.     Haven adopted and is using the Infringing SUBMARINE Marks in bad faith and with a willful intent to capitalize on the goodwill and reputation of Submarine's SUBMARINE Marks.  This constitutes a deliberate and intentional violation of Section 32 of the Lanham Act, and justifies an award of trebled damages and attorneys' fees.

71.     As a direct and proximate result of Haven's conduct, Submarine has been and will be damaged, and such damage will continue, unless the Court enjoins Haven's acts.  Submarine has no adequate remedy at law for Haven's continued violation of Submarine's rights.

## SECOND CAUSE OF ACTION

### Unfair Competition under the Lanham Act

### (15 U.S.C. § 1125(a))

72.     Submarine incorporates by reference the allegations in the preceding paragraphs of this Complaint.

73.     The acts of Haven described herein constitute unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

74.     As alleged above, since at least as early as 1998, Submarine has used its SUBMARINE Marks consistently in United States commerce to advertise, market, produce, distribute, and sell its films and television series, and to distinguish its goods and services from those offered by others.

75.     Submarine owns common law rights in the SUBMARINE Marks, as well as the incontestable SUBMARINE Registrations, that arose prior to Haven's use of the Infringing SUBMARINE Marks in the United States.  Submarine has priority in the SUBMARINE Marks.

76.     The SUBMARINE Marks are conceptually strong, as the term "Submarine" is arbitrary as applied to Submarine's goods and services.

77.     The SUBMARINE Marks are commercially strong by virtue of Submarine's longstanding use and promotional efforts, widespread critical and commercial recognition, and unsolicited third party acclaim.

78.     Haven's Infringing SUBMARINE Marks are identical or highly similar to Submarine's SUBMARINE Marks, are or will be used on the same or highly related products, and are or will be distributed to the same consumers through the same or overlapping channels of trade.

79.     Haven's use of the Infringing SUBMARINE Marks are likely to cause consumers to be confused, mistaken, or deceived as to the source, affiliation, connection, or association of Haven or its films and to believe that Haven or its films are made or sponsored by, or otherwise associated with Submarine or its works offered under the SUBMARINE Marks.

80.     In addition, Haven's use of the Infringing SUBMARINE Marks under the circumstances described herein constitutes a false designation of origin of products and services.

81.     Haven adopted and is using the Infringing SUBMARINE Marks in bad faith and with a willful intent to capitalize on the goodwill and reputation of Submarine's SUBMARINE Marks.  This constitutes a deliberate and intentional violation of Section 43(a) of the Lanham Act, and justifies an award of trebled damages and attorneys' fees.

82.     As a direct and proximate result of Haven's conduct, Submarine has been and will be damaged, and such damage will continue, unless the Court enjoins Haven's acts.  Submarine has no adequate remedy at law for Haven's continued violation of Submarine's rights.

## THIRD CAUSE OF ACTION

### False Advertising under California Law

### (California Business and Professions Code § 17500 *et seq.*)

83.    Submarine incorporates by reference the allegations in the preceding paragraphs of this Complaint.

84.    Haven's acts described herein constitute untrue and misleading advertising as defined by the California Business and Professions Code §§ 17500 *et. seq.*

85.    By using the Infringing SUBMARINE Marks in its marketing and advertising, Haven has made or disseminated, or caused to be made or disseminated, untrue and misleading statements that are likely to cause consumers to be confused, mistaken, or deceived as to the source, affiliation, connection, or association of Haven or its films and to believe that Haven or its films are made or sponsored by, or otherwise associated with Submarine or its works offered under the SUBMARINE Marks.

86.    Haven knew, or should have known, that its marketing and advertising statements using the Infringing SUBMARINE Marks were untrue and misleading.

87.    Haven's acts of untrue and misleading marketing and advertising present a continued threat to consumers and members of the public in that Haven is misrepresenting and will misrepresent the source of its services.

88.    Indeed, on Submarine's information and belief, Haven's use of the Infringing SUBMARINE Marks in the United States has and would mislead any reasonable consumer.

89.    Haven's untrue and misleading advertising has permitted and/or will permit Haven to make substantial sales and profits on the strength of Submarine's success, goodwill, and consumer recognition—sales and profits that would otherwise belong to Submarine.  These acts also will deprive Submarine of the value of, among other things, its SUBMARINE Marks as commercial assets.

90.    On Submarine's information and belief, Haven's foregoing actions have been knowing, deliberate, willful, and in utter disregard of Submarine's rights.

91.    As a direct and proximate result of Haven's wrongful conduct, Submarine has been damaged, and such damage will continue unless the Court enjoins Haven's

wrongful acts. Submarine has no adequate remedy at law for Haven's continuing violation of Submarine's Rights.

## FOURTH CAUSE OF ACTION

### Unfair Competition under California Law

### (California Business and Professions Code § 17200 *et seq.*)

92.    Submarine incorporates by reference the allegations in the preceding paragraphs of this Complaint.

93.    Haven's acts described herein constitute unlawful and unfair business acts and practices within the meaning of California Business and Professions Code § 17200 *et seq.*

94.    Submarine owns common law rights in the SUBMARINE Marks, as well as the incontestable SUBMARINE Registrations, that arose prior to Haven's use of the Infringing SUBMARINE Marks in the United States. Submarine has priority in the SUBMARINE Marks.

95.    Submarine has also built up valuable and tremendous goodwill and consumer recognition for its brand, especially in the industry.

96.    By using the Infringing SUBMARINE Marks in its marketing and advertising, Haven has made or disseminated, or caused to be made or disseminated, untrue and misleading statements that are likely to cause consumers to be confused, mistaken, or deceived as to the source, affiliation, connection, or association of Haven or its films and to believe that Haven or its films are made or sponsored by, or otherwise associated with Submarine or its works offered under the SUBMARINE Marks.

97.    By using the Infringing SUBMARINE Marks on its films and in its marketing and advertising for the films, Haven has committed acts that are likely to cause consumers to be confused, mistaken, or deceived as to the source, affiliation, connection, or association of Haven or its films and to believe that Haven or its films are made or sponsored by, or otherwise associated with Submarine or its works offered under the SUBMARINE Marks.

98.   Haven's acts of untrue and misleading acts present a continued threat to consumers and members of the public in that Haven is misrepresenting and will misrepresent the source of its services.

99.   Indeed, on Submarine's information and belief, Haven's use of the Infringing SUBMARINE Marks in the United States has and would mislead any reasonable consumer.

100.   Haven's untrue and misleading advertising and unauthorized use of the SUBMARINE Marks has permitted and/or will permit Haven to make substantial sales and profits on the strength of Submarine's success, goodwill, and consumer recognition—sales and profits that would otherwise belong to Submarine.  These acts also will deprive Submarine of the value of, among other things, its SUBMARINE Marks as commercial assets.

101.   On Submarine's information and belief, Haven's foregoing actions have been knowing, deliberate, willful, and in utter disregard of Submarine's rights.

102.   As a direct and proximate result of Haven's wrongful conduct, Submarine has been damaged, and such damage will continue unless the Court enjoins Haven's wrongful acts.  Submarine has no adequate remedy at law for Haven's continuing violation of Submarine's Rights.

### FIFTH CAUSE OF ACTION

**Trademark Infringement**

**(California Common Law)**

103.   Submarine incorporates by reference the allegations in the preceding paragraphs of this Complaint.

104.   In addition to the rights under the Lanham Act and state statutory law set forth above, Submarine also has valid and existing common law rights with respect to its SUBMARINE Marks, including in the State of California.

105.   Submarine has used its SUBMARINE Marks, including in the State of California, to distinguish its goods and services from those offered by others and has

distributed those goods and services in the same channels of trade in which Haven does business.

106.   Haven's use of the Infringing SUBMARINE Marks is likely to cause consumer confusion with Submarine's SUBMARINE marks and with regard to the origin, sponsorship, or approval of Haven's goods and services.

107.   Haven's acts constitute infringement of Submarine's SUBMARINE Marks in violation of Submarine's common law rights.

108.   Haven's wrongful acts will permit Haven to make substantial sales and profits on the strength of Submarine's success, goodwill, and consumer recognition.

109.   Haven has engaged and continues to engage in such wrongful acts knowingly and willfully.

110.   As a direct and proximate result of Haven's wrongful conduct, Submarine will be deprived of the value of, among other things, its SUBMARINE Marks as commercial assets.

111.   As a direct and proximate result of Haven's wrongful acts, Submarine has been damaged and such damage will continue unless the Court enjoins Haven's acts. Submarine has no adequate remedy at law for Haven's continuing violation of Submarine's rights.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Submarine respectfully prays for judgment as follows:

a)     That the Court preliminarily and permanently enjoin Haven, its officers, agents, servants, employees, attorneys, and all others in active concert or participating with Haven, from using the name, designation, or trademarks SUBMARINE, SUBMARINE AMSTERDAM, any name, designation, or trademark containing the term SUBMARINE, or any other name, designation, or trademark similar to or likely to cause confusion with Submarine's SUBMARINE Marks, in the marketing, advertising, production, distribution, offering for sale or sale of films or other

audiovisual works; from passing off Haven's goods or services as being associated with Submarine; from registering in its own name any trademark containing the term SUBMARINE; and from committing any other unfair business practices directed toward obtaining for itself the business and customers of Submarine.

b)     That the Court award Submarine the profits made by Haven and the actual damages suffered by Submarine as a result of Haven's unlawful conduct, in an amount to be proven at trial.

c)     That the Court award Submarine injunctive relief and disgorgement of any profits made by Haven as a result of its unlawful conduct under California Business and Professions Code § 17500 *et seq.*

d)     That the Court award Submarine treble damages and enhanced profits pursuant to 15 U.S.C. § 1117(a).

e)     That the Court award prejudgment interest on all amounts awarded.

f)     That the Court award Submarine its costs and attorneys' fees pursuant to 15 U.S.C. § 1117 and applicable California law.

g)     That the Court grant Submarine any other remedy to which it may be entitled, including all remedies provided under 15 U.S.C. § 1117 and California law.

h)     That the Court award such other relief as it deems just and proper.

DATED:  February 18, 2022          FRANKFURT KURNIT KLEIN + SELZ PC

By:        /s/ Vishwanath Kootala Mohan

Vishwanath Kootala Mohan (SBN 313759)
FRANKFURT KURNIT KLEIN + SELZ PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
Telephone:   (310) 579-9600
Facsimile:    (310) 579-9650
vmohan@fkks.com

Kimberly M.  Maynard *(pro hac vice pending)*
FRANKFURT KURNIT KLEIN + SELZ PC
28 Liberty Street, 35th Floor
New York, New York 10005
Telephone: (212) 980-0120
Facsimile: (212) 593-9175
kmaynard@fkks.com

Attorneys for Plaintiffs *SUBMARINE
ENTERTAINMENT, LLC and SUBMARINE
VENTURES, LLC*

## DEMAND FOR JURY TRIAL

Plaintiffs Submarine Entertainment, LLC and Submarine Ventures, LLC hereby demand a trial by jury on all issues raised by the Complaint.

DATED:  February 18, 2022      FRANKFURT KURNIT KLEIN + SELZ PC

By

          /s/ Vishwanath Kootala Mohan

Vishwanath Kootala Mohan (SBN 313759)
FRANKFURT KURNIT KLEIN + SELZ PC
2029 Century Park East, Suite 2500N
Los Angeles, California 90067
Telephone:   (310) 579-9600
Facsimile:    (310) 579-9650
vmohan@fkks.com

Kimberly M.  Maynard *(pro hac vice pending)*
FRANKFURT KURNIT KLEIN + SELZ PC
28 Liberty Street, 35th Floor
New York, New York 10005
Telephone: (212) 980-0120
Facsimile: (212) 593-9175
kmaynard@fkks.com

Attorneys for Plaintiffs *SUBMARINE ENTERTAINMENT, LLC and SUBMARINE VENTURES, LLC*

COMPLAINT